IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BLUEFIELD DIVISION

WILLIAM L. REED,                        )
                                        )
        Plaintiff,                      )
                                        )
v.                                      )          CIVIL ACTION NO. 1:05-0501
                                        )
JO ANNE B. BARNHART,                    )
Commissioner of Social Security,        )
                                        )
        Defendant.                      )

**M E M O R A N D U M   O P I N I O N**

This is an action seeking review of the decision of the Commissioner of Social Security

denying Plaintiff's application for Disability Insurance Benefits (DIB) and Supplemental Security

Income (SSI), under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-

1383f. This case is presently pending before the Court on Plaintiff's Motion for Judgment on the

Pleadings and Motion for Remand (Doc. No. 12.), Defendant's Motion for Judgment on the

Pleadings (Doc. No. 15.), and Plaintiff's Response. (Doc. No. 16.) Both parties have consented in

writing to a decision by the United States Magistrate Judge.

The Plaintiff, William L. Reed (hereinafter referred to as "Claimant"), filed applications for

DIB and SSI on October 4, 2002, (protective filing date), respectively, alleging disability as of

August 14, 1999, due to prostate problems, back pain, nerve problems, kidney stones, and problems

sleeping.[1] (Tr. at 94-96, 113, 335-36.) The claim was denied initially and upon reconsideration. (Tr.

---

[1] Claimant filed prior applications for benefits on January 17, 1974, and January 10, 1980, which were denied at the initial level and not pursued further. (Tr. at 14.) On August 27, 1999, Claimant filed an application for DIB which was denied initially and on reconsideration. (*Id.*) A hearing was held on September 11, 2000, and a supplemental hearing was held on March 5, 2001. By decision dated May 17, 2001, ALJ John Murdock denied Claimant's application. (*Id.*) The ALJ's

at 53-56, 59-61, 337-39, 345-47.) On February 20, 2004, Claimant requested a hearing before an Administrative Law Judge (ALJ). (Tr. at 62.) Hearings were held on August 17, 2004, and November 1, 2004, before the Honorable Steven A. DeMonbreum. (Tr. at 348-61, 362-407.) By decision dated January 12, 2005, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 14-32.) The ALJ's decision became the final decision of the Commissioner on May 13, 2005, when the Appeals Council denied Claimant's request for review. (Tr. at 5-7.) On June 22, 2005, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2004). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third

---

decision became the final decision of the Commissioner on August 8, 2001, when the Appeals Council denied Claimant's request for review. (*Id.*) Claimant then commenced an action in this District Court, where Claimant's appeal was denied by Order entered August 13, 2002. *Reed v. Barnhart*, Civil Action No. 1:01-cv-0822, Doc. No. 10, Order, August 13, 2002 (Faber, C.J.).

2

inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2002). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a) and 416.920a(a).[2] First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents the degree of functional limitation resulting from the

---

[2] As noted above, these Regulations were substantially revised effective September 20, 2000. See 65 Federal Register 50746, 50774 (August 21, 2000).

impairment according to criteria as specified in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). Those

sections provide as follows:

> *(c) Rating the degree of functional limitation.* (1)Assessment of functional
> limitations is a complex and highly individualized process that requires us to
> consider multiple issues and all relevant evidence to obtain a longitudinal picture of
> your overall degree of functional limitation. We will consider all relevant and
> available clinical signs and laboratory findings, the effects of your symptoms, and
> how your functioning may be affected by factors including, but not limited to,
> chronic mental disorders, structured settings, medication and other treatment.
>
> (2) We will rate the degree of your functional limitation based on the extent
> to which your impairment(s) interferes with your ability to function independently,
> appropriately, effectively, and on a sustained basis. Thus, we will consider such
> factors as the quality and level of your overall functional performance, any episodic
> limitations, the amount of supervision or assistance you require, and the settings in
> which you are able to function. See 12.00C through 12.00H of the Listing of
> Impairments in appendix 1 to this subpart for more information about the factors we
> consider when we rate the degree of your functional limitation.
>
> (3) We have identified four broad functional areas in which we will rate the
> degree of your functional limitation: Activities of daily living; social functioning;
> concentration, persistence, or pace; and episodes of decompensation. See 12.00C of
> the Listings of Impairments.
>
> (4) When we rate the degree of limitation in the first three functional areas
> (activities of daily living, social functioning; and concentration, persistence, or pace),
> we will use the following five-point scale: None, mild, moderate, marked, and
> extreme. When we rate the degree of limitation in the fourth functional area
> (episodes of decompensation), we will use the following four-point scale: None, one
> or two, three, four or more. The last point on each scale represents a degree of
> limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA

determines their severity. A rating of "none" or "mild" in the first three functional areas (activities

of daily living, social functioning; and concentration, persistence, or pace) and "none" in the fourth

(episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless

evidence indicates more than minimal limitation in the claimant's ability to do basic work activities.

4

20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1).[3] Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. 20 C.F.R. §§ 404.1520a(d)(2) and 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the Claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3). The Regulation further specifies how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision issued by the administrative law judge and the Appeals Council must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(2) and 416.920a(e)(2).

---

[3] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04, provides that affective disorders, including depression, will be deemed severe when (A) there is medically documented continuous or intermittent persistence of specified symptoms and (B) they result in two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation, each of extended duration or (C) there is a medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities with symptoms currently attenuated by medication or psychosocial support and (1) repeated extended episodes of decompensation; (2) a residual disease process resulting in such marginal adjustment that a minimal increase in mental demands or change in the environment would cause decompensation; or (3) a current history of 1 or more years' inability to function outside a highly supportive living arrangement, and the indication of a continued need for such an arrangement.

5

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he had not engaged in substantial gainful activity since the alleged onset date. (Tr. at 20.) Under the second inquiry, the ALJ found that Claimant had degenerative disc disease, a history of kidney stones and prostate problems, gastric reflux disease, and borderline intellectual functioning, which were severe impairments. (Tr. at 20.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 22-25.) The ALJ then found that Claimant had a residual functional capacity for unskilled work at the sedentary level. (Tr. at 28.) At step four, the ALJ found that Claimant was unable to return to his past relevant work. (Tr. at 28.) Nonetheless, at the fifth inquiry, the ALJ concluded in view of Claimant's residual functional capacity and based upon the testimony of Vocational Expert ("VE"), Bonnie Martindale, that Claimant could perform sedentary level jobs such as a bench assembler, bench sorter, other production jobs, surveillance monitor, gaming jobs, assembler, sedentary truck driver - no loading/unloading, and bench worker. (Tr. at 30.) On this basis, benefits were denied. (Tr. at 30-31.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving

6

conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was born on August 9, 1955, and was 49 years old at the time of the administrative hearing. (Tr. at 19, .) Claimant had a sixth or seventh grade education. (Tr. at 19, 119, 366.) In the past, he worked as a raw coal sampler and a coal tester. (Tr. at 19, 122, 368, 384-85, 395.)

 The Medical Record

The Court has reviewed all the evidence of record, including the medical evidence, and will discuss it below in relation to Claimant's arguments.

Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because the ALJ erred (1) in failing to find that Claimant met or equaled Listing 12.05, and (2) in finding that Claimant was able to perform sedentary work. (Pl.'s Br. at 5.) Claimant also argues that this case must be remanded because in his decision, the ALJ relied upon medical evidence and a prior decision of ALJ John Murdock, which was not part of the administrative record. (Pl.'s Br. at 11-15.) The Commissioner asserts that these arguments are without merit and that substantial evidence supports the ALJ's decision.

1. Motion to Remand.

Claimant argues that this case must be remanded because the ALJ relied on the May 17, 2001, findings and conclusions of ALJ John Murdock, but did not place ALJ Murdock's decision and cited medical evidence in the administrative record. (Pl.'s Br. at 11-15.)

The Court notes initially that the social security regulations allow two types of remand. Under the fourth sentence of 42 U.S.C. § 405(g), the Court has the general power to affirm, modify or reverse the decision of the Commissioner, with or without remanding the cause for rehearing for further development of the evidence. 42 U.S.C. § 405(g); Melkonyan v. Sullivan, 501 U.S. 89, 97, 111 S.Ct. 2157, 2162-63, 115 L.Ed.2d 78 (1991). Where there is new medical evidence, the Court may remand under the sixth sentence of 42 U.S.C. § 405(g) based upon a finding that the new evidence is material and that good cause exists for the failure to previously offer the evidence. 42 U.S.C. § 405(g); Melkonyan, 501 U.S. at 97, 111 S.Ct. at 2162-63. The Supreme Court has explicitly stated that these are the only kinds of remand permitted under the statute. Melkonyan, 501 U.S. at 98, 111 S.Ct. at 2163.

To justify a remand to consider newly submitted evidence, the evidence must meet the requirements of 42 U.S.C. § 405(g) and Borders v. Heckler, 777 F.2d 954, 955 (4th Cir. 1985).[4] In

_____

[4] Within relevant case law, there is some disagreement as to whether 42 U.S.C. § 405(g) or the opinion in *Borders* provides the proper test in this circuit for remand of cases involving new evidence. This court will apply the standard set forth in *Borders* in accordance with the reasoning previously expressed in this district:

> The court in *Wilkins v. Secretary of Dep't of Health & Human Servs.*, 925 F.2d 769 (4th Cir. 1991), suggested that the more stringent *Borders* four-part inquiry is superseded by the standard in 42 U.S.C. 405(g). The standard in § 405(g) allows for remand where "there is new evidence which is material and . . . there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." However, *Borders* has not been expressly overruled. Further, the Supreme Court of the United States has not suggested that *Borders*' construction of § 405(g) is incorrect. Given the uncertainty as to the contours of the applicable test, the Court

Borders, the Fourth Circuit held that newly discovered evidence may warrant a remand to the Commissioner if four prerequisites are met: (1) the evidence is relevant to the determination of disability at the time the application was first filed and not simply cumulative; (2) the evidence is material to the extent that the Commissioner's decision "might reasonably have been different" had the new evidence been before him; (3) there is good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant has presented to the remanding court "at least a general showing of the nature" of the newly discovered evidence.  Id.

Claimant attached to his Brief three additional medical records: (1) A letter to counsel dated July 18, 2005, from the Board of Education of McDowell County, which indicates that Claimant's school records could not be located and that he was not a graduate of a McDowell County school; (2) A psychological evaluation by Teresa E. Jarrell, M.A., a licensed psychologist, dated May 31, 2005; and (3) A Medical Source Statement of Ability to Do Work-Related Activities (Mental) from Ms. Jarrell and dated June 8, 2005. (Pl.'s Br., Exhibits A-C.) To the extent that Claimant seeks a remand based on the newly submitted evidence, the Court finds that the evidence does not provide a basis for remand under Borders. The psychological records were not in existence at the time of the ALJ's decision, and therefore, there is good cause shown why the records were not submitted for review. However, Claimant has not established that the newly submitted evidence is either material or relevant. Although Ms. Jarrell opines that based on test results, Claimant has most likely functioned at a borderline level of intelligence his entire life, Ms. Jarrell's findings are somewhat

---

will apply the more stringent *Borders* inquiry.

*Brock v. Secretary, Health and Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D. W. Va. 1992) (citations omitted).

cumulative of the medical evidence considered by the ALJ. The record contains many references to Claimant's borderline intellectual functioning. Accordingly, the Court finds that Claimant has not satisfied all four factors of <u>Borders</u>, and therefore, remand is inappropriate based on this new evidence.

Claimant further argues that the ALJ's reliance on ALJ Murdock's findings and conclusions was in error for several reasons, and therefore, remand is required. (<u>Id.</u>) First, Claimant argues that ALJ Murdock's decision was reopened and subject to review in light of newer evidence that was not available to him.[5] (Pl.'s Br. at 11.) In his decision, ALJ DeMonbreum clearly stated that he referred

---

[5] The Court in *Grose v. Cohen*, 406 F.2d 823, 825 (4th Cir. 1969), found in view of Social Security Regulations pertaining to reopening final decisions, now 20 C.F.R. §§ 404.987 - 404.989, that "[t]he regulations recognize that it is undesirable to attribute finality to every administrative decision." The Fourth Circuit stated further as follows:

> While the regulation is couched in terms of reopening a decision otherwise final, it also serves to identify decisions that should not be interposed to deny subsequent applications. A decision that is subject to being reopened provides an inappropriate bar. The dictates of equity and fundamental fairness that allow a decision containing error on the face of the evidence to be reopened preclude use of the same decision as a foundation for res judicata.

*Id.* (Footnote omitted.); *See also Leviner v. Richardson*, 443 F.2d 1338, 1343 (4th Cir. 1971)("A prior administrative determination should not . . . be res judicata where new and material evidence is offered which is of sufficient weight that it may result in a different determination.") The current Regulations are quite similar to those considered by the Court in *Grose*. 20 C.F.R. § 404.988(a) and (b) provide as follows:

> A determination, revised determination, decision, or revised decision may be reopened –
> (a) Within 12 months of the date of the notice of the initial determination, for any reason;
> (b) Within four years of the date of the notice of the initial determination if we find good cause, as defined in §404.989, to reopen the case[.]

20 C.F.R. § 404.989(a)(3) provides that "[w]e will find that there is good cause to reopen a determination or decision if – * * * (3) The evidence that was considered in making the

10

to ALJ Murdock's 12.05C analysis because there was "nothing new and material in the current evidence to revise that prior finding." (Tr. at 15.) ALJ DeMonbreum further stated that he considered all the evidence of record. (Tr. at 30.) Thus, ALJ DeMonbreum considered the evidence in the current record but found that it did not alter ALJ Murdock's 12.05 findings.

Second, Claimant asserts that ALJ DeMonbreum was required to accept his own examining consultant's report, that of William C. Steinhoff, Jr., M.A., unless there was compelling evidence to the contrary. (Pl.'s Br. at 12.) As Claimant states, however, ALJ Murdock's decision was reopened, and therefore, ALJ DeMonbreum was able to consider the evidence considered by ALJ Murdock, as well as the current evidence. Mr. Steinhoff reviewed the results of Ms. Cook's testing and opined that Claimant suffered from Anxiety Disorder NOS and Major Depressive Disorder, Recurrent, Moderate. (Tr. at 239-43.) Mr. Steinhoff's diagnoses, observations, and impressions are consistent with other evidence of record. (Tr. at 283.)[6] Furthermore, as will be discussed below, Mr. Steinhoff's reference to Claimant's lower IQ scores is irrelevant because Claimant does not meet the requirements of Listing 12.05 based on the absence of deficits in adaptive functioning.

Finally, Claimant argues that ALJ DeMonbreum's reliance on the prior decision and medical records is inconsistent because he adopted the findings of a non-examining source who opined that Claimant had no severe mental impairment, yet ALJ DeMonbreum found that Claimant's borderline intellectual functioning was severe. (Pl.'s Br. at 12.) The Court again notes that the record contains

---

determination clearly shows on its face that an error was made." It is also noteworthy that these days many cases remain before the Appeals Council for more than twelve months. Nothing prohibits claimants from attempting to reopen decisions while they are pending in the Appeals Council. Further, nothing prohibits claimants from filing subsequent applications, as Claimant in this case did, while adverse rulings are pending review in the Appeals Council.

[6] *See also* 1:01-cv-0822, Doc. No. 7 at 221, 238, 281, 302.

many references to Claimant's borderline intellectual functioning. Accordingly, the Court finds that the ALJ properly referenced ALJ Murdock's decision and the medical records from the prior case with respect to Claimant's mental impairments.

Claimant also argues that because the ALJ did not place ALJ Murdock's decision and the medical records he analyzed in his decision, this Court cannot properly determine whether ALJ DeMonbreum's decision is supported by substantial evidence. The Court notes that while it is preferable that the administrative record contain all evidence considered, the Court nevertheless has obtained the file in <u>Reed v. Barnhart</u>, Civil Action No. 1:01-cv-0822 (S.D. W.Va. Aug. 13, 2002) (Faber, C.J.), which contains ALJ Murdock's decision and the pertinent medical records. (1:01-cv-0822, Doc. No. 7 at 12-24, 219-21, 235-42, 250-60, 279-81, 298-303, 304-09.)[7] The Court, therefore, takes judicial notice of ALJ Murdock's decision and the pertinent medical records. Accordingly, Claimant's arguments for remand are without merit.

Claimant finally argues in support of his Motion for Remand that the ALJ failed to develop the record with respect to his mental impairments. (Pl.'s Br. at 12-15.) He asserts that counsel did not provide certain medical records and that given "the rather strange behavior of plaintiff's counsel," the ALJ had "a heightened duty" to develop the record. (Pl.'s Br. at 13.) The Court finds Claimant's argument on this point unavailing. In <u>Cook v. Heckler</u>, 783 F.2d 1168, 1173 (4th Cir.

---

[7] These records consist of the Psychiatric Evaluation by Muhammed Ghani, M.D., Staff Psychiatrist on February 18, 2000 (Tr. at 219-21, Exhibit 6F.); Progress notes from Southern Highlands Community Mental Health Center from November 1, 1999, through March 6, 2000 (Tr. at 235-42, Exhibit 7F.) and from March 24, 2000, through July 14, 2000 (Tr. at 250-60, Exhibit 9F.); the Pscyhological Evaluation by Constantine G. Demopoulos, M.A., Clinical Psychologist on October 2, 2000 (Tr. at 279-81, Exhibit 13F.); the Psychological Evaluation by Angela A. Cook, M.A., Supervised Psychologist on October 16, 2000 (Tr. at 298-303, Exhibit 16F.); and Progress notes from Southern Highlands Community Mental Center from September 14, 2000, through December 13, 2000. (Tr. at 304-09, Exhibit 17F.)

1986), the Fourth Circuit noted that an ALJ has a "responsibility to help develop the evidence." The Court stated that "[t]his circuit has held that the ALJ has a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record, and cannot rely on evidence submitted by the claimant when that evidence is inadequate." Id. The Court explained that the ALJ's failure to ask further questions and to demand the production of further evidence about the claimant's arthritis claim, in order to determine if it met the requirements in the listings of impairments, amounted to a neglect of his duty to develop the evidence. Id.

It is nevertheless Claimant's responsibility to prove to the Commissioner that he is disabled. 20 C.F.R. § 416.912(a) (2004) (stating that "in general, you have to prove to us that you are blind or disabled. This means that you must furnish medical and other evidence that we can use to reach conclusions about your medical impairment(s).") Thus, the claimant is responsible for providing medical evidence to the Commissioner showing that he has an impairment. Id. § 416.912(c). The Regulations provide that: "You must provide medical evidence showing that you have an impairment(s) and how severe it is during the time you say that you are disabled." § 416.912(c)(2004.)  In Bowen v. Yuckert, 482 U.S. 137, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), the Supreme Court noted:

> The severity regulation does not change the settled allocation of burdens of proof in disability proceedings.  It is true . . . that the Secretary bears the burden of proof at step five . . . [b]ut the Secretary is required to bear this burden only if the sequential evaluation process proceeds to the fifth step.  The claimant first must bear the burden . . . of showing that . . . he has a medically severe impairment or combination of impairments . . . .  If the process ends at step two, the burden of proof never shifts to the Secretary. . . .  It is not unreasonable to require the claimant, who is in a better position to provide information about his own medical condition, to do so.

Bowen v. Yuckert, 482 U.S. at 146, n. 5; 107 S.Ct. at 2294, n. 5 (1987). Thus, although the ALJ has a duty to develop the record fully and fairly, he is not required to act as the claimant's counsel. Clark

v. Shalala, 28 F.3d 828, 830-31 (8th Cir. 1994). Claimant bears the burden of establishing a *prima facie* entitlement to benefits.  See Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); 42 U.S.C.A. § 423(d)(5)(A)("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require.")  Similarly, Claimant "bears the risk of non-persuasion."  Seacrist v. Weinberger, 538 F.2d 1054, 1056 (4th Cir. 1976).

The ALJ gave Claimant's counsel a period of thirty days on at least two occasions to supplement the record with additional medical evidence. (Tr. at 365-66, 382.) By letter dated December 1, 2004, the ALJ advised counsel that he had not received any additional evidence from her but would consider any new evidence received by his office prior to his decision being issued. (Tr. at 33.) Counsel, however, never submitted additional evidence.

The Court finds that the ALJ satisfied his duty to develop the record when he gave counsel ample opportunity to submit new evidence and then advised her that he had not received any such evidence. As stated above, the ALJ is not required to act as Claimant's counsel and the Court finds that the ALJ inquired reasonably, appropriately, and consistently with the applicable Regulations. Furthermore, it appears that the ALJ nevertheless reviewed some of the evidence as it was contained in the prior case. Accordingly, the Court finds that the ALJ satisfied his duty to develop the record and that Claimant's argument is without merit.

2. Listing 12.05C, Mental Retardation.

Claimant argues that the ALJ erred in finding that he did not meet or equal Listing 12.05, Mental Retardation. (Pl.'s Br. at 5-15.) Claimant argues that his October 16, 2000, psychological evaluation by Angela A. Cook, Supervised Psychologist at Southern Highlands Community Mental

14

Health Center revealed  a full scale IQ score of 63, and that he had an additional severe impairment, as found by the ALJ, which meets the requirements of the Listing.[8] (Id.) Claimant does not identify to which subsection of Listing 12.05 he refers in his brief. However, the only language that he discussed in his brief pertained to subsection "C." Accordingly, the Commissioner, and the Court, considers Claimant's argument under Listing 12.05C.[9] The Commissioner concedes that Claimant had IQ scores between sixty and seventy as required to meet Listing 12.05. (Def.'s Br. at 7, n.5.) The Commissioner, however, asserts that Claimant has not established that he has significant deficits or impairments in adaptive functioning, and therefore, has not met his burden of proof that he met the threshold requirement of Listing 12.05C. (Def.'s Br. at 5-7.) The Commissioner thus asserts that this argument is without merit and that the ALJ's decision is supported by substantial evidence. (Id.)

"The Listing of Impairments describes, for each of the major body systems, impairments that are considered severe enough to prevent an adult from doing any gainful activity," regardless of age, education or work experience, see Sullivan v. Zebley, 493 U.S. 521, 532, 110 S.Ct. 885, 892, 107 L.Ed.2d 967 (1990); 20 C.F.R §§ 404.1525(a), 416.925(a) (2004). Section 12.05 of the Listing of Impairments provides criteria for determining whether an individual is disabled by mental retardation or autism. "Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental

_____

[8] Ms. Cook's Psychological Evaluation is contained in the prior case, 1:01-cv-0822, Doc. No. 7, at 298-303, Exhibit 16F.

[9] Considering Claimant's arguments under the remaining subsections of Listing 12.05, the Court finds them to be without merit. The evidence reveals that Claimant was neither dependent on others for personal needs nor unable to follow directions (12.05A); he had an IQ score above 59 (12.05B); and he had only mild limitations in activities of daily living, social functioning, and concentration, persistence, or pace, with no episodes of decompensation (12.05D). Accordingly, Claimant cannot establish mental retardation under 12.05A, B, or D.

period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05 (2004). Additionally, in order to meet the criteria of § 12.05C, Claimant must show "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05C (2004).

The Fourth Circuit has held that a claimant's additional "severe" impairment qualifies as a significant work-related limitation for the purpose of listing § 12.05C. <u>Luckey v. U.S. Dept. of Health & Human Serv.</u>, 890 F.2d 666 (4th Cir. 1989) (per curiam). A "severe" impairment is one "which significantly limits [one's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c) (2004). In <u>Luckey</u>, the Court ruled that:

> Luckey's inability to perform his prior relevant work alone established the significant work-related limitation of function requirement of § 12.05C. Further, the Secretary has defined a severe impairment or combination of impairments as those which significantly limit an individual's physical or mental ability to do basic work activities. The Secretary's finding that Luckey suffers from a severe combination of impairments also establishes the second prong of § 12.05C.

<u>Id.</u> at 669 (internal citations omitted).

As described in the introduction to the Listing, one of the essential features of mental retardation is significant deficits in adaptive functioning. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00; <u>See also, The Merck Manual of Diagnosis and Therapy</u> 2259 (Mark H. Beers, M.D. & Robert Berkow, M.D., eds., 17th ed. 1999) (defining mental retardation as "significantly subaverage intellectual quotient with related limitations in two or more of the following: communication, self-care, home living, social skills, community use, self-direction, health and safety, functional

academics, leisure, and work.").[10] Also, according to the <u>Diagnostic and Statistical Manual of Mental Disorders</u>, 4th Edition, ("DSM-IV")(1994), one of the essential features of mental retardation is significant deficits in adaptive functioning. <u>Id.</u> at 39-40. Adaptive functioning refers to how effectively an individual copes with common life demands and how well he meets the standards of personal independence expected of someone in his particular age group, sociocultural background, and community setting. <u>Id.</u> at 40. Thus, although Claimant appears to argue that Listing 12.05C is a two-part test, consisting only of the requisite IQ scores and an additional severe impairment, the Regulations make clear that it is a three-part test. The Introduction to section 12.00 of the Listings, section 12.00A, was revised in 2000 to state as follows:

> The structure of the listing for mental retardation (12.05) is different from that of the other mental disorders listings. Listing 12.05 contains an introductory paragraph with the diagnostic description for mental retardation. It also contains four sets of criteria (paragraphs A through D). If your impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria, we will find that your impairment meets the listing.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00A; 65 Fed. Reg. 50, 746, 50, 776; <u>see also</u> <u>Foster v. Halter</u>, 279 F.3d 348, 354 (6th Cir. 2001) (detailing change).

The Commissioner essentially argues that section 12.05C is a three-part test, with the introductory paragraph ("significantly subaverage general intellectual functioning with deficits in adaptive behavior initially manifested during the developmental period") being the threshold requirement. Although the Fourth Circuit has not addressed this issue after the amendment to the

_____

[10] "In 1992 the American Medical Association on Mental Retardation changed the definition of mental retardation to reflect adaptation to the environment and interaction with others by a person with limited intellectual functioning.  Classification based on IQ alone (mild, 52 to 68; moderate, 36 to 51, severe, 20 to 35; profound, less than 20) has been replaced to that based on level of support needed." <u>The Merck Manual of Diagnosis and Therapy</u> 2259 (Mark H. Beers, M.D. & Robert Berkow, M.D., eds., 17th ed. 1999).

Regulations, other Circuits have held that a claimant must meet the "deficits in adaptive functioning requirement" to meet all of the criteria for Listing 12.05C. See, e.g., Higgins v. Barnhart, 288 F. Supp. 2d 811 (S.D. Tex. 2002) (claimant failed to display adaptive functioning deficits despite requisite IQ scores); Burrell v. Commissioner, 2000 WL 1827799 (6th Cir. Dec. 8, 2000) (receiving benefits under 12.05 also requires a deficit in adaptive functioning). In Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992), the Eleventh Circuit held as follows:

> Generally, a claimant meets the criteria for presumptive disability under section 12.05C when the claimant presents a valid IQ score of 60 to 70 inclusive, and evidence of an additional mental or physical impairment that has more than 'minimal effect' on the claimant's ability to perform basic work activities. This court, however, has recognized that a valid IQ score need not be conclusive of mental retardation where the IQ score is inconsistent with other evidence in the record on the claimant's daily activities and behavior.

(internal citations omitted). This Court too, has followed this approach. See Slaughter v. Barnhart, Civil Action No. 1:03-0058, March 29, 2004 Order, Doc. No. 18 (Faber, C.J.).[11]

---

[11] In his Response, Claimant argues that *Branham v. Heckler*, 775 F.2d 1271 (4th Cir. 1985), is "good law" and applies in the instant case. (Pl.'s Resp. at 1.) In *Branham*, the Fourth Circuit held that where a claimant who met the IQ limitations of 12.05C also suffered from a back impairment which precluded his past relevant work but permitted light work, the significant prong of the test had been met as a matter of law. *Id.* at 1273-74. Following the revision to § 12.00A, this District Court in *Slaughter*, held as follows:

> The *Branham* and *Luckey* decisions are binding as to the construction of § 12.05C as it existed in 1989. They are not binding after the 2000 revision, and the plain language of the current regulations require a claimant to satisfy "the diagnostic description in the introductory paragraph and any one of the four sets of criteria." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00A.

*Slaughter v. Barnhart*, Civil Action No. 1:03-0058, March 29, 2004 Order, Doc. No. 18 at 5. Claimant filed his application for DIB and SSI in the instant case on October 4, 2002, after the revision. Accordingly, to the extent Claimant argues that *Branham* requires only IQ scores and another impairment to establish equivalency of Listing 12.05C, the Court finds Claimant's argument is without merit.

18

Accordingly, despite some evidence of the requisite IQ scores (verbal IQ of 65, performance IQ of 67, full scale IQ score of 63) and the additional severe impairment of degenerative disc disease (Tr. at 20), the ALJ did not find that Claimant met Listing 12.05C. The ALJ found that Claimant had the severe impairment of borderline intellectual functioning, but found that Claimant had no impairment or combination of impairments which met or equaled a Listed impairment. (Tr. at 22.) The ALJ set forth the standards for analyzing Claimant's mental impairments under Listing 12.05C. (Tr. at 24-25.) Rather than perform a 12.05C analysis himself, the ALJ adopted the analysis, findings, and conclusions of ALJ Murdock and found that Claimant did not meet Listing 12.05C. (Tr. at 21-22; 1:01-cv-0822, Doc. No. 7 at 15-19.) ALJ Murdock found that the IQ scores rendered in connection with testing administered by Ms. Cook were not valid. (Id.) He found that the prior intellectual testing by Mr. Demopoulous, verbal IQ of 73, performance IQ of 78, and full scale IQ of 75, were more consistent with his education. (Id.) Thus, ALJ Murdock accorded more weight to these scores and concluded that Claimant's IQ scores did not meet those as required by Listing 12.05C. (Id.)

In his 12.05 analysis, Judge Murdock did not specifically address whether Claimant had adaptive deficits prior to age 22. Nevertheless, he and ALJ DeMonbreum found that "Claimant's mental impairments resulted in no more than mild functional limitations impacting activities of daily living; social functioning; and concentration, persistence, and pace." (Tr. at 23; ALJ Murdock at 19.) His mental impairments did not produce any repeated episodes of decompensation of extended duration. (Id.) The medical records indicate that Claimant's speech was relevant and coherent and that he had no communicative limitations. (Tr. at 241-42, 265, 283.) He testified that was able to care for his personal needs, with the occasional assistance of his wife in tying his shoes and helping

19

him get in the shower. (Tr. at 379-80.) Assistance was required in these areas due to his back impairment. (Id.) Although he reported that he did not perform any chores around the house, he was able to concentrate all day on television. (Tr. at 287, 381.)

Claimant completed the sixth grade and quit school during the seventh grade. (Tr. at 19, 119, 366.) He reported that he was able to read and write but had difficulty with reading comprehension. (Tr. at 112, 285.) Mr. Demopoulos, who conducted a psychological evaluation and testing on October 2, 2000, found that Claimant had a verbal IQ of 73, performance IQ of 78, and full scale IQ of 75, diagnosed borderline range of intelligence, not mental retardation. (1:01-cv-0822, Doc. No. 7 at 280-81.) He noted that the test results were valid and seemed "to be an accurate estimate of his intellectual ability." (1:01-cv-0822, Doc. No. 7 at 280.) Ms. Cook, who conducted a psychological evaluation and testing on October 10, 2000, found that Claimant had a verbal IQ of 65, performance IQ of 67, and full scale IQ of 63, diagnosed mild mental retardation and a GAF of 65. (1:01-cv-0822, Doc. No. 7 at 300-02.) However, Ms. Jarrell, who conducted a psychological evaluation and testing on May 31, 2005, which is attached to Claimant's brief, and found that Claimant had a verbal IQ of 72, performance IQ of 68, and a full scale IQ of 68, diagnosed only borderline intellectual functioning. (Pl.'s Br. at Exhibit B, p. 6.) She found that the results were "relatively commensurate with results quoted in review of records." (Id.) She further found that he had "functioned at this level of intelligence all of his life." (Id.)

Despite his borderline intellectual functioning, Claimant was able to work for approximately sixteen years as a raw coal sampler and tester, which was semi-skilled work. (Tr. at 122, 368, 395.) He worked until August 1999, when he quit working due to his back injury. (Tr. at 19, 170, 366, 369.) Dr. Muhammed Ghani, M.D., reported that Claimant had fair self esteem but felt worthless

at times because he was unable to provide financially for his family (1:01-cv-0822, Doc. No. 7 at 219.), and Case Manager Randall E. Coleman reported that Claimant had a good self image. (Id. at 240-41.)

The foregoing analysis reveals that Claimant did not have the requisite adaptive deficits in functioning prior to the age of twenty-two to meet Listing 12.05C. Even had the ALJ specifically addressed this issue, it is highly unlikely that the ALJ would have found evidence of adaptive deficits prior to age twenty-two. Accordingly, the Court finds that the ALJ's determination that Claimant did not meet or equal Listing 12.05C for mental retardation is supported by substantial evidence.

3. <u>Step Five Analysis</u>.

Claimant also argues that the ALJ erred at step five of the sequential analysis "by finding an ability to engage in sedentary work." (Pl.'s Br. at 5.) The Commissioner asserts that the ALJ's decision is supported by substantial evidence because the VE "responded to a hypothetical question that fairly set out all of [Claimant's] impairments." (Def.'s Br. at 7-11.)

At steps four and five of the sequential analysis, the ALJ must determine the claimant's residual functional capacity (RFC) for substantial gainful activity. "RFC represents the most that an individual can do despite his or her limitations or restrictions." <u>See</u> Social Security Ruling 96-8p, 61 Fed. Reg. 34474, 34476 (1996). Looking at all the relevant evidence, the ALJ must consider the claimant's ability to meet the physical, mental, sensory and other demands of any job. 20 C.F.R. §§ 404.1545(a), 416.945(a) (2004). "This assessment of your remaining capacity for work is not a decision on whether you are disabled, but is used as the basis for determining the particular types of work you may be able to do despite your impairment(s)." <u>Id.</u> "In determining the claimant's

21

residual functional capacity, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of her impairments." Ostronski v. Chater, 94 F.3d 413, 418 (8th Cir. 1996).

The RFC determination is an issue reserved to the Commissioner. See 20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2) (2004).

> In determining what a claimant can do despite his limitations, the SSA must consider the entire record, including all relevant medical and nonmedical evidence, such as a claimant's own statement of what he or she is able or unable to do. That is, the SSA need not accept only physicians' opinions. In fact, if conflicting medical evidence is present, the SSA has the responsibility of resolving the conflict.

Diaz v. Chater, 55 F.3d 300, 306 (7th Cir. 1995) (citations omitted).

The ALJ determined that Claimant had the residual functional capacity to perform unskilled work at the sedentary level of exertion. As the Commissioner notes, this language is consistent with Claimant's lack of counseling or therapy, for whatever reason, for nearly four years from 1999 to 2003, and with his borderline intellectual functioning. The Court agrees with the Commissioner that the medical evidence and Claimant's statements support the ALJ's RFC assessment. The ALJ properly evaluated and considered all the evidence of record in making a determination of Claimant's RFC.

To be relevant or helpful, a vocational expert's opinion must be based upon consideration of all evidence of record, and it must be in response to a hypothetical question which fairly sets out all of the claimant's impairments. Walker v. Bowen, 889 F.2d 47, 51 (4th Cir. 1989). "[I]t is difficult to see how a vocational expert can be of any assistance if he is not familiar with the particular claimant's impairments and abilities -- presumably, he must study the evidence of record to reach the necessary level of familiarity." Id. at 51, see also English v. Shalala, 10 F.3d 1080, 1085 (4th Cir.

22

1993) (stating that "in questioning a vocational expert in a social security disability hearing, the ALJ must propound hypothetical questions to the expert that are based upon a consideration of all relevant evidence of record on the Claimant's impairments."). A hypothetical question must reflect all of a claimant's impairments that are supported by the record; otherwise the question is deficient and the expert's answer to it cannot be considered substantial evidence. See Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987); see also Pickney v. Chater, 96 F.3d 294, 296-97 (8th Cir. 1996) (holding that "a hypothetical question posed to a vocational expert must capture the concrete consequences of claimant's deficiencies"); Osenbrock v. Apfel, 240 F.3d 1157, 1163-64 (9th Cir. 2001) (stating that "An ALJ must propose a hypothetical to a vocational expert that is based on medical assumptions supported by substantial evidence in the record that reflects each of the Claimant's limitations."). Additionally, the hypothetical question may omit non-severe impairments, but must include those which the ALJ finds to be severe. Benenate v. Schweiker, 719 F.2d 291, 292 (8th Cir. 1983). If a Claimant's complaints are not credible, the hypothetical question posed to the vocational expert should contain no reference to them. See Jones v. Bowen, 841 F.2d 849, 851 (4th Cir. 1988.), overruled on other grounds by, Thompson v. Bowen, 850 F.2d 346 (8th Cir. 1988).

The Court finds that the ALJ's hypothetical question took into account Claimant's impairments which were supported by the record. The ALJ limited the hypothetical person to sedentary work that involved unskilled, simple, easy to learn, one or two-step types of jobs. (Tr. at 396-99.) The VE responded that there were jobs which such an individual could perform. (Id.) Specifically, the VE identified the jobs of bench assembler, bench sorter, other production jobs, surveillance monitor, assembler, gaming jobs, sedentary truck driver - no loading/unloading, and bench worker (Tr. at 30,  396-99.) as jobs that an individual with Claimant's age, educational

background, employment history, and RFC for sedentary work could perform. The limitation to sedentary work took into consideration Claimant's physical impairments, and the limitation to simple, repetitive tasks accommodated his borderline intellectual functioning. Additionally, the Court has already considered and upheld the ALJ's findings that Claimant did not meet the 12.05C Listing for mental retardation; these findings will not be addressed again here. Accordingly, the ALJ correctly did not reference this matter in the hypothetical question. The ALJ's hypothetical question set forth the severe impairments and resulting limitations which were supported by the record. Accordingly, the hypothetical question was proper and the ALJ did not err in relying upon the VE's response thereto. Thus, the ALJ's decision at step five of the sequential analysis is supported by substantial evidence and Claimant's argument is therefore without merit.

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is supported by substantial evidence.  Accordingly, by Judgment Order entered this day, the Plaintiff's Motion for Judgment on the Pleadings and Motion for Remand is **DENIED**, Defendant's Motion for Judgment on the Pleadings is **GRANTED**, the final decision of the Commissioner is **AFFIRMED** and this matter is **DISMISSED** from the docket of this Court.

The Clerk of this Court is directed to send a copy of this Memorandum Opinion to counsel of record.

ENTER: September 28, 2006.

R. Clarke VanDervort
United States Magistrate Judge

24